**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 16-cv-02117-CMA-SKC

In RE: RUMSEY LAND COMPANY, LLC,

      Debtor.

RUMSEY LAND COMPANY, LLC,

      Plaintiff,

v.

RESOURCE LAND HOLDING, LLC,
SORIN NATURAL RESOURCE PARTNERS, LLC, and
PUEBLO BANK AND TRUST COMPANY, LLC,

      Defendants.

───────────────────────────────────────────────

**ORDER GRANTING DEFENDANT RLH'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT PBT'S MOTION FOR JOINDER**

───────────────────────────────────────────────

This matter is before the Court on Defendants Resource Land Holding, LLC, and

Sorin Natural Resource Partners, LLC's (collectively, "Defendant RLH") Motion for

Summary Judgment. (Doc. # 73.) The Court also addresses Defendant Pueblo Bank

and Trust Company, LLC's ("Defendant PBT") Motion for Joinder in Support of

Defendant RLH's Motion for Summary Judgment. (Doc. # 79.) For the reasons that

follow, the Court grants Defendant RLH's Motion for Summary Judgment and grants

Defendant PBT's Motion for Joinder.

# I.    BACKGROUND

This litigation has a tortuous history.  United States Magistrate Judge Mark L. Carman detailed its factual background in his March 5, 2018 Recommendation on Motions to Dismiss (Doc. # 75), which the Court affirmed and adopted on March 30, 2018 (Doc. # 82).  United States Magistrate Judge S. Kato Crews has since identified the parties' stipulations of fact in the Final Pretrial Order.  (Doc. # 94 at 8–11.) Magistrate Judge Carman's and Magistrate Judge Crews's recitals of the facts are incorporated herein.  The background of this dispute will be repeated only to the extent necessary to address Defendant RLH's Motion for Summary Judgment and Defendant PBT's Motion for Joinder.

## A.    THE BANKRUPTCY ACTION

Plaintiff-Debtor the Rumsey Land Company, LLC ("Rumsey") is a privately-held, Colorado-based limited liability company that owns real property in Elizabeth, Nederland, and Evans, Colorado.  (Doc. # 63-17 at 3.)  At some point prior to 2009, Rumsey acquired ownership of the Rumsey Farm and environs (the "Property").  (*Id.*) The Property included 380 acres of land, three homes, roads and other infrastructure, mineable gravel reserves, and 38 shares of stock in the Godfrey Ditch Company, which carried with them rights to harvest 800 acre feet of water annually.  (*Id.*)  At the pertinent times described below, the Property was subject to two secured claims: (1) a first deed of trust securing a loan made by Defendant PBT, with an outstanding amount due of approximately $5,640,000, and (2) a second deed of trust securing a loan held by non-party RLF II, which is not at issue.  (Doc. # 63-31 at 2.)

In 2009, Rumsey considered selling the Property and presented it to Defendant RLH. (Doc. # 63-17 at 4.) Rumsey alleges that it informed Defendant PBT about its negotiations with Defendant RLH and discerned that Defendant PBT was not willing to cooperate on the sale of the Property to Defendant RLH. (*Id.*) Defendant PBT accelerated collections on its loan to Rumsey in late 2009.[1] (*Id.*)

In response to Defendant PBT's acceleration of its loan payment collections, on January 15, 2010, Rumsey filed a Voluntary Petition pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Colorado, case number 10-10691-HRT. (Doc. # 66-1.) Defendant PBT filed a proof of claim for approximately $5,640,000 with the Bankruptcy Court. (Doc. # 31-1.)

On April 15, 2010, Defendant RLH agreed to purchase the Property for a cash price of $7,484,397.75, plus a royalty payment from the net proceeds received on any subsequent sale of certain sand, gravel, and water rights. (Doc. # 63-31 at 2.) On April 29, 2010, Rumsey filed with the Bankruptcy Court its First Motion to Approve Sale. (Doc. # 66-22.) Three creditors[2] objected to Rumsey's First Motion to Approve Sale, asserting that the Property had not been marketed properly. (Doc. ## 66-29, 66-30, 66-34.)

---

[1] The Court assumes that Rumsey was in default on its loan payments to Defendant PBT and that the parties' promissory note included an acceleration clause. *See, e.g., Hassler v. Account Brokers of Larimer Cty.*, 274 P.3d 547, 549 (Colo. 2012) (discussing a security agreement that gave the lender authority to accelerate the loan and to require immediate payment of the outstanding balance at its option after the debtor defaulted); *Rustic Hills Shopping Plaza v. Columbia Sav. & Loan Ass'n*, 661 P.2d 254, 257 (Colo. 1983). In any case, Rumsey does not take issue with the propriety on Defendant PBT's accelerated collection of loan payments.

[2] The three objecting creditors were: John and Richard Green (Doc. # 66-29); TRACS Growth Investment Club, LLC and TRCA IRA Growth Investment Club, LLC (Doc. # 66-30); and RLF2, LLC, its assigns, and Joshua Suter (Doc. # 66-31).

The Bankruptcy Court conducted an evidentiary hearing on Rumsey's First Motion to Approve Sale, and on September 3, 2010, it denied the motion. (Doc. # 66-57.) The Bankruptcy Court ordered Rumsey to work with the objecting creditors to retain a broker and to establish bidding, auction, and sale procedures. (Doc. # 63-31 at 2.) With the Bankruptcy Court's approval (Doc. # 66-70), Rumsey employed General Capital Partners, LLC ("GCP") to handle all matters related to the marketing and sale of the Property, *see* (Doc. # 66-62).

Meanwhile, after the Bankruptcy Court denied Rumsey's First Motion to Approve Sale, Defendant PBT entered into an agreement with Defendant RLH to sell Defendant PBT's loan agreement with Rumsey to Defendant RLH for $4,600,000 (the "Loan Purchase Agreement") on December 1, 2010.[3] (Doc. # 73-2 at 31–42, 44.)

On December 27, 2010, Rumsey filed with the Bankruptcy Court its Second Motion to Approve Sale Pursuant to an Auction. *See* (Doc. # 66-88.) The Bankruptcy Court held an evidentiary hearing on Rumsey's proposed procedures for the auction, *see* (*id.*), and approved the procedures on March 2, 2011 (Doc. # 66-86).

On March 15, 2011, shortly after the Bankruptcy Court approved the procedures for the auction, Defendant RLH filed a lawsuit against Defendant PBT to enforce the Loan Purchase Agreement in the District Court for the City and County of Pueblo,

---

[3] Rumsey alleges that Defendant PBT "concealed" the existence of the Loan Purchase Agreement from Rumsey and the Bankruptcy Court. (Doc. # 63-17 at 10.) However, Rumsey does not cite authority for the proposition that Defendant PBT or Defendant RLH had any obligation to disclose the Loan Purchase Agreement to Rumsey or the Bankruptcy Court.

Colorado, case number 11CV172.[4]  (Doc. # 63-1 at 34–42.)  Defendants RLH and PBT

stipulate that on February 1, 2011, Defendant PBT had refused to close on the Loan

Purchase Agreement, "contending it had terminated," and had tendered the deposit

money back to RLH.  (Doc. # 63-17 at 10.)  On April 5, 2011, Defendant PBT answered

Defendant RLH's Complaint, and filed a counterclaim seeking a declaration that it had

not breached the Loan Purchase Agreement and that the Loan Purchase Agreement

terminated when the deal failed to close on January 31, 2011.  (Doc. # 63-32.)

Meanwhile, the Bankruptcy Court timely received the following bids for the

auction of the Property:

- A credit bid of $5,000,000 from Defendant PBT, which desired to be considered a stalking horse bidder;

- A proposed stalking horse bid of $4,000,000 from Sorin Natural Resource Partners, LLC ("Sorin"), submitted on letterhead of Defendant RLH, its registered agent;

- A bid of $8,600,000 for certain lots from Confluence Resource Holdings ("Confluence"); and

- Two bids from Westside Investment Partners, Inc. ("Westside") for the remaining lots that Confluence did not bid on.

(Doc. # 63-31 at 3.)

The auction of the Property was held on May 11, 2011.  (*Id.*)  At the conclusion of

the auction, Confluence was declared the highest and best bidder for the lots included

in its offer, and Westside was declared the highest and best bidder for the remaining

lots.  (Doc. # 66-100.)  Because Confluence's and Westside's offers were contingent on

---

[4] Again, Rumsey alleges that neither Defendant RLH nor Defendant PBT notified Rumsey or the Bankruptcy Court of the lawsuit.  (Doc. # 63-17 at 11.)  The Court has found no authority imposing such a notification requirement on either Defendant RLH or Defendant PBT.

a sixty-day due diligence period, Defendant PBT was selected as the back-up bidder on the Property. (*Id.*) Both Defendants RLH and PBT received notice of the proposed sale to Confluence and Westside. (Doc. # 94 at 11.) On June 16, 2011, the Bankruptcy Court held a hearing on the proposed sale order of the Property, (Doc. # 63-31 at 4), and on the following day, it entered the sale order (Doc. # 66-113), triggering Confluence's and Westside's sixty-day due diligence period. On August 15, 2011, Confluence notified Rumsey that "based upon its inspections," Confluence "elect[ed] not to proceed with closing" on the Property. (Doc. # 55-115 at 7.) Rumsey then accepted Defendant PBT's back-up bid for the Property.

At roughly the same time, on September 13, 2011, Defendants RLH and PBT agreed to settle the suit between them in Pueblo District Court, with Defendant PBT selling the Property to Defendant RLH for $4,750,000. (Doc. # 73 at 7.) Approximately one week later, the Pueblo District Court dismissed Defendant RLH's case against Defendant PBT with prejudice by stipulation of the parties. (Doc. # 63-31 at 4.) Neither Defendant RLH nor Defendant PBT notified Rumsey or the Bankruptcy Court of the lawsuit's resolution. (*Id.*)

On October 5, 2011, the Bankruptcy Court entered an order approving the sale and transferring title to the Property to Defendant PBT. (Doc. # 66-119.)

Shortly thereafter, Defendant PBT conveyed title to the Property to Sorin, whose registered agent is Defendant RLH, for $4,750,000. (Doc. # 73-2 at 81–87.) Defendant RLH does not distinguish between itself and Sorin in its Motion for Summary Judgment. *See* (Doc. # 73 at 7 ("PBT sold the Property to RLH in October 2011")).

Finally, on October 20, 2011, Rumsey's bankruptcy case was closed. (Doc. # 63-31 at 5.)

## B. RUMSEY'S ADVERSARY PROCEEDING IN THE BANKRUPTCY COURT

On June 4, 2015, Rumsey filed with the Bankruptcy Court a Motion to Set Aside Order Dismissing Bankruptcy Case and to Reinstate Case. (*Id.*) Rumsey alleges that the following led to the filing of the adversary proceeding:

> In May of 2014, one of the interest holders of Rumsey was alerted that PBT had begun aggressively seeking to collect upon the deficiency.[5] On June 10, 2014, said interest holder discovered in a COCourts.com search, there was a civil action initiated by RLH against PBT. However, the interest holder had no access to the pleadings in the civil action. Nor was there reason to suspect nefarious conduct. It was not until [early in 2015] that the interest holder (who is also a guarantor of the PBT debt) along with certain of the other guarantors retained counsel due to the collection efforts of PBT. That counsel pulled a copy of the complaint and at that moment[,] the inside dealings of PBT and RLH were discovered. This discovery prompted an investigation, and ultimately the decision to seek to set aside the Dismissal Order [in its bankruptcy case.]

(Doc. # 63-17 at 20–21.)

On June 10, 2015, Rumsey and certain of Rumsey's guarantors, including William Romanowski, filed an adversary proceeding against Defendants RLH, Sorin, and PBT in the Bankruptcy Court. (*Id.*) The Bankruptcy Court reopened Rumsey's bankruptcy case in order to allow the adversary proceeding to go forward. (Doc. # 63-31 at 5.) The action now before **this** Court is that adversary proceeding. *See* (Doc. # 75 at 2.)

---

[5] Rumsey alleges that Defendant PBT secured a deficiency judgment against "the guarantors on the Pueblo Bank Loan, which include Rod Guerrieri, Kevin France, and William Romanowski" in 2010 and that $1,826,424 remained due under the deficiency judgment as of 2014. (Doc. # 63-17 at 22–23.)

The operative pleading is Rumsey's Amended Complaint, filed on October 14, 2015. (Doc. # 63-17.) Rumsey alleges that Defendants "PBT and RLH entered into a secret collusive agreement which had the effect of corrupting the bidding and sale procedures approved by the Bankruptcy Court." (*Id.* at 1.) It claims:

> PBT concealed from the parties in interest and the [Bankruptcy] Court that they had entered into a secret [deal] to sell the first deed of trust [on the Property] to RLH for a price of $4.9 million. This "secret deal" allowed RLH to acquire [the Property] for a savings of $2.5 million based on the price that they original bid. It also deprived the creditors of Rumsey of not less than $2.5 million. PBT's attempt to secretly chill the auction process . . . victimizes the [Bankruptcy] court by compromising its integrity.

(*Id.* at 2.) Rumsey requests that "the sale be reversed and that the [Property] be returned to the bankruptcy estate." (*Id.*) It asserts six causes of action:

I. Fraud on the Court, against all Defendants;

II. Violation of 11 U.S.C. § 363(n) – Prohibition of Collusive Bidding Activities, against all Defendants;

III. Breach of Contract, against Defendant PBT only;

IV. Negligence, against all Defendants;[6]

V. Fraudulent Concealment, against all Defendants; and

VI. Breach of Duty of Good Faith and Fair Dealing, against Defendant PBT only.

(*Id.* at 22–32.)

Defendants filed Motions to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), as incorporated in Federal Rule of Bankruptcy Procedure 7012, in the Bankruptcy Court. *See* (Doc. # 63-31 at 1.) On June 2, 2017,

---

[6] Rumsey states that its negligence claim "may be construed as one for negligent misrepresentation." (Doc. # 80 at 20.)

United States Bankruptcy Judge Howard R. Tallman denied the Motions to Dismiss. (*Id.*)

Defendant RLH filed its Motion to Withdraw Reference to the Bankruptcy Court on July 5, 2016, which the Bankruptcy Court referred to this Court.  (Doc. ## 2, 11.)  On July 17, 2017, Magistrate Judge Craig B. Shaffer granted Defendant RLH's Motion to Withdraw Reference.  (Doc. # 19.)  Accordingly, Rumsey's adversary proceeding against Defendants is now before this Court.

## C.    PROCEDURAL HISTORY IN THIS CASE

On March 30, 2018, this Court affirmed and adopted Magistrate Judge Carman's Report and Recommendation on Defendants' Motions to Dismiss.  (Doc. ## 82, 75.)  This Court thereby dismissed Plaintiff William Romanowski's Claims III and VI without prejudice.  (Doc. # 83 at 2.)  It clarified that Claims III and VI, as asserted by Rumsey, remain.  (*Id.*)

Defendant RLH moved for summary judgment on all claims against it (Claims I, II, IV, and V) on March 2, 2018.  (Doc. # 73.)  Defendant PBT filed its Motion for Joinder on March 15, 2018.  (Doc. # 79.)  Defendant PBT "joins in and supports" Defendant RLH's Motion for Summary Judgment and argues that the two claims asserted against only Defendant PBT, Claims III and VI, should also be dismissed because they derive from the other claims.  (*Id.* at 2.)

Rumsey responded in opposition to Defendant RLH's Motion for Summary Judgment on March 23, 2018.  (Doc. # 80.)  Defendant RLH filed its Reply in support of its Motion for Summary Judgment on April 13, 2018.  (Doc. # 84.)

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id*. However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party

may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a verdict in its favor. *Jaramillo v. Adams Cty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

## III. DISCUSSION

### A. STATUTE OF LIMITATIONS

#### 1. Applicable Legal Principles

Defendants first argue that they are entitled to summary judgment on all of Rumsey's claims because each claim is time-barred. (Doc. # 73 at 9.) The statute of limitations is an affirmative defense. *Aldrich v. McColluch Prop., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980). However, "[o]nce a defendant satisfies his initial burden to show that a claim is untimely, . . . the burden shifts to [the p]laintiff to establish a later accrual date of the statute of limitations or to show that there is a basis to toll the accrual date." *Rezaq v. Nalley*, No. 07-CV-02483, 2008 WL 5172363, *5 (D. Colo. Dec. 10, 2008) (citing *Aldrich*, 627 F.2d at 1041 n.4)); *Overheiser v. Safeway Stores, Inc.*, 814 P.2d 12, 13 (Colo. App. 1991) (citing *Smith v. Kent Oil Co.*, 261 P.2d 149, 151 (Colo. 1953)).

A cause of action for injury to a person accrues "on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." Colo. Rev. Stat. § 13-8-108(1). In a cause of action for fraud, misrepresentation, or concealment, the accrual date is "the date such fraud, misrepresentation, concealment, or deceit is discovered or should have been discovered by the exercise of reasonable diligence." Colo. Rev. Stat. § 13-8-108(3).

Colorado law provides the following limitations periods for Rumsey's claims: for Claim I, Fraud on the Court, three years, *see* Colo. Rev. Stat. § 13-8-101(1)(c); for Claim III, Breach of Contract against Defendant PBT, three years, *see* Colo. Rev. Stat. § 13-8-101(1)(a); for Claim IV, Negligence, two years, *see* Colo. Rev. Stat. § 13-8-102(1)(a); for Claim V, Fraudulent Concealment, three years, *see* Colo. Rev. Stat. § 13-8-101(1)(c); and for Claim VI, Breach of Duty of Good Faith and Fair Dealing against Defendant PBT, three years, *see* Colo. Rev. Stat. § 13-8-101(1)(a).

As to Claim II, Violation of 11 U.S.C. § 363(n), the parties disagree about the length of the limitations period. Rumsey requests that the Court "avoid the sale under section 363(n) because the sale price was controlled by an agreement among potential bidders at such sale." (Doc. # 63-17 at 27.) Like the plaintiff seeking the same relief in *Penco Food Corp. v. DelPrete* (*In re Clinton St. Food Corp.*), 254 B.R. 523, 529 n.3 (S.D.N.Y. 2000)), Rumsey's Claim II is therefore governed by Federal Rule of Civil Procedure 60(b)'s one-year limitations period.[7] In *In re Clinton Street Food Corp.*, the

---

[7] Rule 60(b) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an

Court explained that "because [the plaintiff] is seeking to avoid the Sale Order by reason of defendants' alleged fraud, [it] characterize[d] th[e] § 363(n) claim as a motion under Rule 60(b)(3), and appl[ied] its one-year statute of limitations." 254 B.R. at 529. The Court agrees with Defendant RLH's interpretation of the case law.

2. <u>Application</u>

The Court concludes there is a genuine dispute over a fact material to each of Rumsey's claims: the date the causes of action accrued. Defendant RLH argues in its Motion for Summary Judgment that because Rumsey "alleges that RLH's concealed attempts to purchase PB&T's debt caused the Bankruptcy Court to approve the sale of the Property to PB&T at an artificially lower price," Rumsey's alleged injury occurred on October 6, 2011, the date the Bankruptcy Court transferred the Property to Defendant PBT. (Doc. # 73 at 10.) Rumsey counters that "[e]ven assuming [its] injury occurred on October 6, 2011, [it] . . . was not aware of, and had no reason to be aware of, the wrongful cause of its injury until early 2015, when it gained access to the Pueblo County District Court files for RLH's lawsuit against PBT." (Doc. # 80 at 11–13.) Rumsey therefore asserts that its causes of action did not accrue until early 2015. (*Id.*) The parties also disagree about whether Rumsey had actual notice about Defendants RLH's and PBT's dealings from GCP, which Rumsey had retained to market and sell the Property.[8] (Doc. # 73 at 10–11; Doc. # 80 at 11–12; Doc. # 84 at 6.)

---

opposing party," among other reasons. Fed. R. Civ. P. 60(b)(3). It states that a Rule 60(b) motion made on the grounds of fraud, misrepresentation, or misconduct by an opposing party must be made "no more than a year after the entry of the judgment or order or the date of the processing." Fed. R. Civ. P. 60(c)(1).
[8] Defendant RLH states:

Upon review of these allegations and supporting evidence in the light most favorable to Rumsey, the nonmoving party, it is clear that there is a genuine dispute of material fact as to when Rumsey's causes of action accrued. This is an issue to be settled at trial by the finder of fact. Therefore, Defendant RLH's Motion for Summary Judgment and Defendant PBT's Motion for Joinder, to the extent that they seek to dismiss Rumsey's claims on the grounds of statutes of limitations, are denied. *See*, *e.g.*, *Runyan v. Fey*, No. 15-cv-00009, 2015 WL 9304734, *4 (D. Colo. Dec. 22, 2015); *James v. Fenske*, No. 10-cv-02591, 2012 WL 694351, *6 (D. Colo. March 1, 2015).

## B.    CLAIM V, FRAUDULENT CONCEALMENT

Defendant RLH next argues that it is entitled to summary judgment on Rumsey's claim for fraudulent concealment (Claim V). (Doc. # 73 at 13–16.) Defendant PBT "incorporates and adapts [sic] RLH's facts and arguments." (Doc. # 79 at 2.)

### 1.    Elements of the Claim

To state a claim for fraudulent concealment under Colorado law, a plaintiff must assert:

> (1) the defendant's concealment of a material existing fact that in equity or good conscience should be disclosed, (2) the defendant's knowledge that the fact is being concealed, (3) the plaintiff's ignorance of the fact, (4) the defendant's intent that the plaintiff act on the concealed fact, and (5) the plaintiff's action on the concealment resulting in damage.

---

The undisputed evidence is that on January 7, 2011, Mr. Christensen [Defendant RLH's counsel] informed Mr. Blair [of GCP] about RLH's agreement to purchase the PB&T Loan. Thus, Rumsey Land received actual notice of RLH's agreement to purchase the PB&T Loan in January 2011. As a result, Rumsey Land already had notice of the alleged cause of its alleged injury on the day the injury occurred.
(Doc. # 73 at 11.) Rumsey disagrees, asserting that "Mr. Blair disputes that accuracy of the conversation as described by Mr. Christensen as being contrary to his normal and ordinary broker practices." (Doc. # 80 at 4.)

*Burman v. Richmond Homes Ltd.*, 821 P.2d 913, 918 (Colo. App. 1991); *FDIC v. Refco Group, Ltd.*, 989 F. Supp. 1052, 1081 (D. Colo. 1997).

Thus, to establish a claim for fraudulent concealment, a plaintiff must show that the defendant had a duty to disclose information. *Id*. The determination of whether a plaintiff has done so "should precede any further analysis of the other elements." *Med Safe Nw., Inc. v. Medvial, Inc.*, 1 F. App'x 795, 801 (10th Cir. 2001) (unpublished). Whether a defendant had a duty to disclose a particular fact is a question of law. *Id*. In the context of a business transaction:

> A party to a business transaction has a duty to disclose to the other party facts basic to the transaction if (1) he knows that the other is about to enter into it under a mistake as to them and (2) the other party, because of the relationship between them, the customs of the trade, or other objective circumstances, would reasonably expect a disclosure of those facts.

*Burman*, 821 P.2d at 918 (citing *Berger v. Sec. Pac. Info. Sys., Inc.*, 794 P.2d 1380 (Colo. App. 1990)); Restatement (Second) of Torts § 551(2)(e)); *see also Windon Third Oil & Gas P'ship v. FDIC*, 805 F.2d 342, 346 (10th Cir. 1986), *overruled on other grounds, Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1214 (10th Cir. 1996). Colorado courts look to the Restatement (Second) of Torts, Section 551, for guidance. *See id*. The Restatement adds that a party to a business transaction is also "under a duty to exercise reasonable care to disclose to the other before the transaction is consummated":

> (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and
> (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

(c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and

(d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Restatement (Second) of Torts § 551(2).

    2.    <u>Application</u>

        *a.*    <u>*Fraudulent Concealment as to Defendant RLH*</u>

Defendant RLH argues that Rumsey fails to assert several elements of its fraudulent concealment claim.  (Doc. # 73 at 13–16.)  First, it asserts that it did not have a duty to disclose its Loan Purchase Agreement with Defendant PBT to Rumsey.  (*Id.* at 13–14.)  The Court agrees, though for a reason different than Defendant RLH's argument,[9] that Defendant RLH owed no duty to Rumsey.

The duty to disclose "arises when one party has information 'that the other party is entitled to know **because of a fiduciary or other similar relation of trust and confidence between them**.'"  *Chiarella v. United States*, 445 U.S. 222, 228 (1980) (emphasis added) (quoting Restatement (Second) of Torts § 551(2)(a)).  As to a "relation of trust and confidence" between two parties,[10] the Restatement explains that

---

[9] Defendant RLH interprets the Restatement (Second) of Torts, Section 551(2)(b), as requiring that it (the defendant) "make an untrue or ambiguous statement," and it claims that it did not do so.  (Doc. # 73 at 14.)  Defendant RLH argues that Rumsey "cannot put forth evidence that RLH made any untrue or ambiguous statements—material or otherwise—to the Bankruptcy Court because there is no such evidence."  (*Id.*)

[10] Rumsey and Defendant RLH were not in a fiduciary relationship.  The Court therefore focuses on the other source of a duty: a relation of trust and confidence.

in addition to the relations between a trustee and its beneficiary and an agent and its principal:

> Other relations of trust and confidence include those of the executor of an estate and its beneficiary, a bank and an investing depositor, and those of physician and patient, attorney and client, priest and parishioner, partners, tenants in common and guardian and ward. . . . In addition, certain types of contracts, such as those of suretyship or guaranty, insurance and joint adventure, are recognized as creating in themselves a confidential relation and hence as requiring the utmost good faith and full and fair disclosure of all material facts.

Restatement (Second) of Torts § 551 cmt. f.

Consequently, for Rumsey to premise liability on Defendant RLH for its alleged fraudulent concealment, it "must provide facts which demonstrate that a relationship of trust and confidence between the parties." *Windon Third Oil & Gas P'ship*, 805 F.2d 342 at 347. There is no general duty for all participants in market transactions to disclose material, nonpublic information. *Id*. (citing *Chiarella*, 445 U.S. at 226). Rumsey has not offered evidence of a relationship of trust and confidence between it and Defendant RLH. When the Bankruptcy Court presided over the auction and ordered that the title to the Property be transferred to Defendant PBT in 2011, Defendant RLH was nothing more to Rumsey than a prospective buyer of the Property whose bid at the auction had failed. The relationship between a seller and a once-prospective buyer is not imbued with the trust and confidence necessary to give rise to a duty. *See* Restatement (Second) of Torts § 551 cmt. f. The Court therefore concludes as a matter of law that Defendant RLH had no duty to disclose information to Rumsey.

Rumsey fails to persuade the Court otherwise, as it does not explain why Defendant RLH owed it a duty to disclose relevant information or, stated differently,

what relationship between it and RLH was instilled with trust and confidence.  *See* (Doc. # 80 at 14–15.)  Rumsey's only reference to the establishment of a duty is its statement that "a person has a duty to **disclose to another with whom he deals** facts that in equity or good conscience should be disclosed."  (Doc. # 80 at 14 (citing *Berger*, 795 P.2d at 1383)).  However, parties' 'dealings,' without more, are insufficient to give rise to a duty to disclose between the parties.  *See Chiarella*, 445 U.S. at 226.  "Despite the crucial nature of the issue, [Rumsey] do[es] not . . . present a developed argument for ascribing the requisite duty to disclose" on Defendant RLH.  *See Med Safe Nw., Inc.,* 1 F. App'x at 801 (affirming the district court's grant of summary judgment for defendants on plaintiffs' fraudulent concealment claim).  Rumsey provides only an unsupported, conclusory assertion that Defendant RLH owed it a duty, an essential element of its claim for fraudulent concealment.  The Court therefore grants summary judgment in Defendant RLH's favor on Rumsey's claim for fraudulent concealment (Claim V).

Because Rumsey has not carried its burden to prove that Defendant RLH had a duty to disclose the Loan Purchase Agreement, the Court need not reach Defendant RLH's alternative arguments that the Loan Purchase Agreement was not material and that Rumsey was not damaged.  *See* (Doc. # 73 at 14–16.)

b.       *Fraudulent Concealment as to Defendant PBT*

In its Motion for Joinder, Defendant PBT does not assert its own argument as to why it is entitled to summary judgment on Rumsey's fraudulent concealment claim; it merely "incorporates and adapts [sic] RLH's facts and arguments."  (Doc. # 79 at 2.) The Court therefore looks to Defendant RLH's Motion for Summary Judgment.

First, Defendant RLH—and Defendant PBT, by virtue of its incorporation—argue that they did not have a duty to disclose the Loan Purchase Agreement to Rumsey. (Doc. # 73 at 13–14; Doc. # 79 at 2.)  The Court agrees with Defendant RLH, as it just described.  However, Defendant PBT was in a different relationship with Rumsey than was Defendant RLH.  Defendant PBT was ultimately the successful bidder at the auction, and the Bankruptcy Court ordered that title to the Property be transferred to Defendant PBT.  (Doc. # 66-119.)

Despite differences between the Rumsey-Defendant RLH relationship and the Rumsey-Defendant PBT relationship, Rumsey does not proffer **any** argument about why Defendant PBT in particular owed it a duty to disclose the Loan Purchase Agreement.  Rumsey focuses exclusively on its relationship with Defendant RLH in responding to the Defendants' summary judgment motions.  *See* (Doc. # 80 at 14–16.) In its Complaint, Rumsey merely states that "Defendants had a duty to disclose all agreements to the parties in interest of Rumsey's bankruptcy case and the Court[,] which would have an impact on the auction and sale process."  (Doc. # 62-17 at 29.) Rumsey's conclusory statements are insufficient to satisfy its burden to "show as a matter of law that [Defendant PBT] had a duty to disclose the information at issue."  *See Med Safe Nw., Inc.,* 1 F. App'x at 801.  The Court therefore concludes that summary judgment on Rumsey's fraudulent concealment claim is also appropriate in favor of Defendant PBT.

For these reasons, the Court grants summary judgment in favor of Defendants RLH and PBT on Rumsey's claim for fraudulent concealment (Claim V).

## C. FRAUD ON THE COURT, CLAIM I

Defendant RLH's third argument is that it is entitled to summary judgment on Rumsey's fraud on the court claim (Claim I). (Doc. # 73 at 16.) Defendant PBT "incorporates and adapts [sic] RLH's facts and arguments" on this claim and does not make an argument of its own. (Doc. # 79 at 2.)

### 1. Elements of the Claim

A claim for fraud on the court requires the plaintiff to conclusively prove: (1) the fraud; (2) intent to defraud; and (3) an injury to more than a single litigation that assaults the integrity of the judicial process. *In re Dey*, BAP No. CO-14-026, 2015 WL 669788, *4 (10th Cir. BAP (Colo.) Feb. 17, 2015) (citing *Hazel-Atlas Class Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944)).

Fraud on the court is fraud "which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury." *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985). "Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court. Less egregious misconduct, **such as nondisclosure to the court of facts allegedly pertinent to the matter before it**, will not ordinarily rise to the level of fraud on the court." *Weese v. Schukman*, 98 F.3d 542, 552 (10th Cir. 1996) (quoting *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978)); *In re Dey*, 2015 WL 669788 at *4.

2.    Application

First, Defendant RLH argues, and Defendant PBT agrees, that Rumsey cannot

satisfy the first element of fraud on the court because "[t]here was no fraud." (Doc. # 73

at 16–17; Doc. # 79 at 2.) Defendant RLH explains that because Defendant PBT

"reneged" on their "arm's-length transaction for RLH to purchase the PB&T loan,"

Defendant RLH had "nothing to report to the [Bankruptcy] Court." (Doc. # 73 at 16.)

Rumsey responds by asserting that "the truth of the matter is that RLH was affirmatively

seeking to enforce the [Loan Purchase Agreement] during the entire auction process."

(Doc. # 80 at 18.) Rumsey describes that Defendant RLH's position throughout its

lawsuit in Pueblo District Court "was that the [Loan Purchase Agreement] was a fully

enforceable agreement, and [that] RLH continued to pursue enforcement of the

agreement even after the auction had been concluded and PBT had been awarded the

bid." (*Id.* at 18–19.) The Court is not persuaded by Rumsey's Response. It agrees

with Defendant RLH that because Defendant PBT "reneged" on the Loan Purchase

Agreement prior to the auction and because the Pueblo District Court had not enforced

the Loan Purchase Agreement, Defendant RLH (and Defendant PBT) had "nothing to

report to the [Bankruptcy] Court." (Doc. # 73 at 16.) Even if Defendant RLH or

Defendant PBT did have a duty to report the litigation about the Loan Purchase

Agreement to the Bankruptcy Court, nondisclosure by a party or a party's attorney "will

not ordinarily rise to the level of fraud on the court." *Weese*, 98 F.3d at 552; *see also* 11

Charles Alan Wright, et al., Federal Practice & Procedure § 2452 (3d ed. 2018)

("Nondisclosure by a party or the party's attorney has not been enough"). Rumsey falls

far short of alleging sufficiently egregious conduct by Defendant RLH or Defendant PBT

to create a genuine issue of material fact. The Court therefore awards summary

judgment in Defendants RLH and PBT's favor on Rumsey's claim for fraud on the court

(Claim I). It need not address the remaining elements of Rumsey's fraud on the court

claim.

**D.    VIOLATION OF SECTION 363(N), CLAIM II**

Defendant RLH briefly argues that it is entitled to summary judgment on

Rumsey's claim for violation of Section 363(n) of the Bankruptcy Code (Claim II). (Doc.

# 73 at 18.) Defendant PBT adopts Defendant RLH's argument without more. *See*

(Doc. # 79 at 2.)

1.    Elements of the Claim

A trustee may be entitled to void the sale of its property under Section 363(n) of

the Bankruptcy Code if "the sale price was controlled by an agreement among potential

bidders at such sale, or may recover from a party to such agreement any amount by

which the value of the property sold exceeds the price at which such sale was

consummated." 11 U.S.C. § 363(n). To do so, the trustee has the burden of showing

that "(1) there [was] an agreement; (2) between potential bidders; (3) that controlled the

price at bidding." *Birdsell v. Fort McDowell Sand & Gravel (In re Sanner)*, 218 B.R. 941,

944–45 (Bankr. D. Ariz. 1998). Moreover, the parties to the agreement "must have

intended the agreement to actually control the price, and not merely affect the price."

*Id.*; *Lone Star Indus., Inc. v. Compania Naviera Perez Companc (In re New York Tap*

*Rock Corp.)*, 42 F.3d 747, 752 (2d Cir. 1994).

2.      Application

The parties disagree as to whether Defendants RLH and PBT intended to have the Loan Purchase Agreement affect the sale price of the Property.  Defendant RLH argues that summary judgment is appropriate because Rumsey "cannot show any facts from which a jury could find . . . that RLH had an agreement to control the sale price at the [Property] auction, and that the sale price was actually controlled by an agreement." (Doc. # 73 at 18.)  It claims that the existence of the Loan Purchase Agreement between it and PBT "is not evidence of collusion."  (*Id.*)  Rumsey counters that "[t]he very purpose of RLH's lawsuit against PBT [in Pueblo District Court] was to establish its contractual right to have the agreed upon amount of the [Loan Purchase Agreement] control the sale price as between potential bidders RLH and PBT."  (Doc. # 80.) However, Rumsey does not set forth specific facts from which a rational trier of fact could infer that Defendants RLH and PBT entered into the Loan Purchase Agreement with intent that the Agreement control the price.  Rumsey fails to meet its burden.  *See Adler*, 144 F.3d at 671.  Summary judgment in favor of Defendants RLH and PBT on Claim II is therefore warranted.

**E.      NEGLIGENCE, CLAIM IV**

Defendants RLH's final argument is that it is entitled to summary judgment on Rumsey's claim of negligence (Claim IV).  Defendant PBT joins in this argument.  (Doc. # 79 at 2.)  The Court agrees with Defendant RLH.

1.    <u>Elements of the Claim</u>

Under Colorado law, the elements of a claim of negligence are: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) injury to the plaintiff; and (4) a proximate causal relationship between the breach and the injury.  *Casebolt v. Cowan*, 829 P.2d 352, 356 (Colo. 1992).  "The threshold question in any negligence action is therefore 'whether the defendant owed a legal duty to protect the plaintiff against injury.'"  *Ayala v. United States*, 49 F.3d 607, 611 (10th Cir. 1995) (quoting *Connes v. Molalla Transp. Sys., Inc.*, 831 P.2d 1316, 1320 (Colo. 1992)).  This is a question of law to be determined by the court.  *Id.*  The source of a legal duty may be either a legislative enactment or the common law.  *Id.* (citing *Bd. of Cty. Comm'rs v. Moreland*, 764 P.2d 812, 816 (Colo. 1988)).

2.    <u>Application</u>

Defendant RLH explains that because Rumsey's allegation is of nonfeasance, Colorado law will recognize a duty only where there is a "special relationship" between the parties.  (Doc. # 73 at 19 (citing *Univ. of Denver v. Whitlock*, 744 P.2d 54, 57 (Colo. 1987)).  None of the limited circumstances in which Colorado law recognizes such a special relationship exist here, according to Defendant RLH.  (*Id.*)  "Because there is no special relationship as a matter of law," it argues, it "had no legal duty to act and [Rumsey's] claim for negligence fails."  (*Id.*)  Rumsey responds not by addressing Defendant RLH's argument but by claiming for the first time that its negligence claim "may be construed as one for negligent misrepresentation."  (Doc. # 80 at 20.)

It is improper for Rumsey to raise a claim for negligent misrepresentation for the first time in its Response. "The Federal Rules of Civil Procedure do not 'permit plaintiffs to wait until the last minute to ascertain and refine the theories on which they intend to build their case.'" *Hollstein v. Caleel & Hayden, LLC*, No. 11-cv-00605, 2012 WL 4050302, *5 (D. Colo. Sept. 14, 2012) (quoting *Orr v. City of Albuquerque*, 417 F.3d 1144, 1153 (10th Cir. 2005)). As such, Rumsey's new claim for negligent misrepresentation is properly considered as a request to amend the Complaint. *See id.* (citing *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 790 n.9 (10th Cir. 1998)).

Although the Federal Rules of Civil Procedure provide that a court should grant leave to amend "freely . . . when justice so requires," *see* Fed. R. Civ. P. 15(a)(2), a court must first determine whether amendment is within the deadline prescribed by the scheduling order in the case. *Id.* Here, the Scheduling Order provides that the deadline for amendment of pleadings was November 30, 2017. (Doc. # 44.) Thus, Rumsey's motion to amend is untimely. "Courts in this district often resolve untimely motions to amend by considering whether the party seeking to amend has shown 'good cause' under [Rule] 16(b)(4)." *Hollstein*, 2012 WL 4050302 at *6. Rumsey does not acknowledge that it is raising a new issue in its Response, much less explain why it did not assert this claim for negligent misrepresentation in a timely manner. Rumsey has not shown "good cause" for its failure to amend the Complaint in a timely manner, and its claim can be dismissed on this basis alone. The Court therefore grants summary judgment in favor of both Defendants on Rumsey's claim for negligence (Claim IV).

**F.      CONTRACTUAL CLAIMS AGAINST PBT, CLAIMS III AND VI**

As the Court previously explained, Rumsey's Property was subject to a deed of trust securing a loan made by Defendant PBT.  *See* (Doc. # 63-31 at 2.)  This loan agreement between Rumsey and Defendant PBT is the basis on Rumsey's contractual claims against Defendant PBT.

In Claim III, Rumsey alleges breach of contract by Defendant PBT.  (Doc. # 63-17 at 27–29.)  Rumsey asserts that Defendant PBT breached its loan agreement with Rumsey "by acting in a manner so as to impair the value of the collateral which secured PBT [sic] loan."  (*Id.* at 27.)  Specifically, it alleges that "PBT interfered with the bidding process approved by the Bankruptcy Court . . . PBT sought the Court's approval to be a Stalking Horse Bidder while concealing that they were negotiating a 'back door' agreement with RLH which would have the effect of chilling the bidding processes."  (*Id.*)  Rumsey further alleges that "[a]s a direct result of PBT's negotiations with PBT [sic], RLH did not bid the fair market value of the property but instead reduced their original $7.2 million offer to an amount that was less than PBT's stalking horse bid of $5 million."  (*Id.* at 29.)

In Claim VI, Rumsey claims that Defendant PBT breached the duty of good faith and fair dealing implied in the parties' loan agreement.  (*Id.* at 30–32.)  Defendant PBT did so, according to Rumsey, "by failing to disclose during the auction and sale processes its back-door deal with RLH or Sorin" and "by making false and misleading statements to the Bankruptcy Court and parties in interest."  (*Id.* at 31–32.)

In its brief Motion for Joinder, Defendant PBT moves for summary judgment on these contractual claims. (Doc. # 79 at 2.) Defendant PBT argues that these claims "are predicated on Rumsey . . . being successful in proving Counts I, II, IV, and V, specifically that RLH and PBT engaged in acts which defrauded the [Bankruptcy Court] by engaging in secret discussions to collude and interfere with the bankruptcy action of [the Property]." (*Id.*) The Court agrees. The contractual claims allege the same malfeasance as Rumsey's other claims, and the Court has already found that Defendant PBT is entitled to summary judgment on those claims. To the extent that Rumsey alleges that Defendant PBT breached their contract, Rumsey fails to produce the loan agreement between them, nor does it cite any specific provisions of the agreement. The Court therefore grants PBT's Motion for Joinder to the extent that PBT requests that "any claims Rumsey . . . may have under [Claims] III and VI also be dismissed."[11] *See* (Doc. # 79. at 3.)

## IV.    CONCLUSION

Accordingly, the Court ORDERS that Defendant RLH's Motion for Summary Judgment (Doc. # 73) is GRANTED as to all claims (Claims I, II, IV, and V) asserted against Defendant RLH. It is

FURTHER ORDERED that PBT's Motion for Joinder (Doc. # 79) is GRANTED as to all claims (Claims I–VI) asserted against Defendant PBT. It is

FURTHER ORDERED that Rumsey's action is DISMISSED WITH PREJUDICE.

---

[11] At best, Rumsey's allegations in Claims III and VI may suffice as an equitable defense should Defendant PBT try to collect on a deficiency judgment. Such an argument is for the future though.

DATED:  October 26, 2018

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge